**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **JOSE GUADALUPE PACHECO-ORTUNA, #28705-078** | § § § | |
| **VS.** | § § | **CIVIL ACTION NO. 4:21cv506** **CRIMINAL ACTION NO. 4:19cr172(1)** |
| **UNITED STATES OF AMERICA** | § § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is *pro se* Movant Jose Guadalupe Pacheco-Ortuna's motion to vacate, set aside, or correct sentence filed pursuant to 28 U.S.C. § 2255. After reviewing the case, the court concludes that Movant's § 2255 motion should be denied and the case dismissed with prejudice.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 12, 2019, a narcotics task force coordinated a meeting between a confidential source ("CS") and Movant, involving a kilogram-quantity source of supply from the Houston, Texas area. Crim. ECF (Dkt. #179, p. 5). Movant agreed to supply the CS with 10 kilograms of methamphetamine and arranged for the two to meet at a predetermined location in Plano, Texas. *Id.* Further, Movant informed the CS he would have the methamphetamine with him and that they could off-load the methamphetamine at a residence nearby. *Id.* Movant told the CS that Urbano Hernandez-Pineda, a.k.a. "El Toro" ("Hernandez-Pineda"), would accompany him. *Id.*

Later that evening, surveillance units observed Movant arrive at the predetermined location in a 2014 Chevrolet Malibu, which was occupied by Movant, his wife Catalina Chavez-Cardenas ("Chavez-Cardenas"), their nine-year-old child, and Hernandez-Pineda. *Id.* Surveillance units then observed Movant and Hernandez-Pineda exit the vehicle and establish contact with the CS. *Id.* The

CS then overheard Hernandez-Pineda call an unknown subject who advised that a second vehicle was in the same parking lot. *Id.* Shortly thereafter, officers observed a 2014 Ford Fiesta approach the CS, Movant, and Hernandez-Pineda. *Id.* The driver of the vehicle was later identified as Everardo Garcia-Osorio ("Garcia-Osorio").

The CS informed Garcia-Osorio that he needed to see the methamphetamine, at which time the CS entered Garcia-Osorio's vehicle and observed a gallon-size bag containing methamphetamine. *Id.* The CS then told all the parties to follow him/her in their respective vehicles so that the drug transaction could be finalized at a secondary location. *Id.*

Sometime thereafter, a traffic stop was conducted by deputies with the Collin County, Texas Sheriff's Office on Garcia-Osorio's vehicle, which contained the methamphetamine. *Id.* Deputies made contact with Garcia-Osorio and the passenger, Aurora Elizondo ("Elizondo"). *Id.* at p. 6. The deputies then deployed the police K9 who performed an open-air sniff and alerted to the presence of narcotics. *Id.* A search of the vehicle ensued, and officers located three cellphones, two digital scales, a notebook, and gallon-sized bags containing a total of 4,491 grams of methamphetamine (actual). *Id.* This drug amount was confirmed by a laboratory report. *Id.* During Garcia-Osorio's post-arrest interview, he admitted his girlfriend, Elizondo, was the "lookout" while he spoke to the CS. Garcia-Osorio also reported that his brother-in-law, "JC," gave him and Elizondo $600 to help them pay for an apartment they recently obtained. *Id.* Elizondo then spoke to agents and stated that she picked up the 4,491 grams of methamphetamine (actual) from a storage unit in Dallas, Texas that was registered in her name. *Id.*

A traffic stop was also conducted on Movant's vehicle. *Id.* Movant, Chavez-Cardenas, their child, and Hernandez-Pineda were transported to the Lewisville, Texas, Police Department for processing. *Id.* During Movant's post-arrest statement, he advised that he was the middleman in a

drug transaction involving one kilogram of methamphetamine. *Id.* He also stated that he picked up Hernandez-Pineda and drove him to the Dallas, Texas area to meet with an unknown subject. *Id.* According to Movant, Hernandez-Pineda then called the unknown subject at the predetermined location and shortly thereafter, Garcia-Osorio arrived with the methamphetamine to meet with the CS. *Id.* Movant reported that he was getting paid for getting all the parties together. *Id.* During Hernandez-Pineda's post-arrest statement, he admitted to making several phone calls and reported his role was to assist with the drug transaction. *Id.*

On June 13, 2019, agents obtained a search warrant for Elizondo's storage unit and executed the search. *Id.* In the storage unit, agents located and seized 56.5 kilograms of methamphetamine, 9.14 grams of black tar heroin, and $12,600 in U.S. currency. *Id.* Elizondo advised that she and "JC" were the only ones with keys to the storage unit and the only ones who removed anything from the unit. *Id.*

On July 9, 2019, the Grand Jury for the Eastern District of Texas, Sherman Division, returned a two-count Indictment against Movant and six others. Count 1 charged Movant and six others with conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. Crim. ECF (Dkt. ##40, 51). Count 2 charged Movant and five others with conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846. *Id.* Counts 1 and 2 occurred from sometime on or about January 2019 to July 9, 2019. *Id.*

On September 11, 2019, a three-count First Superseding Indictment was filed. Crim. ECF (Dkt. ##78, 90). One defendant was added to Count 1, and the offense date was extended to September 11, 2019. *Id.* In Count 2, the offense date was extended to September 11, 2019. Movant was not named in Count 3. *Id.*

On October 8, 2019, a three-count Second Superseding Indictment was filed. Crim. ECF (Dkt. ##102, 118). Two defendants were added to Count 1, and the offense date was extended to October 9, 2019. *Id.* In Count 2, the offense date was extended to October 9, 2019. Movant was not named in Count 3. *Id.*

On January 28, 2020, pursuant to a written non-binding written plea agreement, Movant pled guilty to Count 1 of the Second Superseding Indictment: conspiracy to possess with intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846. Crim. ECF (Dkt. ##147-153). On July 7, 2020, the court accepted the plea agreement and sentenced Movant to 235 months' imprisonment and five years' supervised release. Crim. ECF (Dkt. ##186, 193). Movant filed a direct appeal, Crim. ECF (Dkt. #199), but his counsel filed an *Anders* brief, stating that a review of the record revealed no non-frivolous grounds for appeal. Movant filed a response. On January 28, 2021, the Fifth Circuit Court of Appeals dismissed Movant's appeal as frivolous. Crim. ECF (Dkt. #267).

Movant filed the present § 2255 motion (Dkt. #1) and supporting memorandum (Dkt. #1-1) on June 28, 2021.[1] In his § 2255 motion, Movant argues that he is entitled to relief because: (1) his counsel rendered ineffective assistance; (2) his plea was neither knowing nor voluntary due to his counsel and the court misinforming him of the essential elements of the crime; (3) his Fourth Amendment rights were violated by an "illegal search and seizure of [his] person"; (4) the Second Superseding Indictment was "factually barren and violated the double jeopardy clause"; (5) a variance occurred because "the facts proved at sentencing deviate from the facts contained in the indictment"; (6) the second superseding indictment was "multiplicious" and raised double

---

[1] Movant states that he placed his § 2255 motion in the prison mailbox on June 28, 2021; thus, it is deemed filed on that date, pursuant to the prison mailbox rule. *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) (the timeliness of petition for determining the effective date of the AEDPA limitations deadline depends on the date prisoner delivered his papers to prison authorities for filing).

jeopardy issues because it charged three counts of conspiracy; (7) he was "subjected to extreme prejudice, because the sealed indictments did not apprise him with reasonable certainty of the nature of the accusation"; (8) the evidence was insufficient to support the conspiracy charge; and (9) he is actually innocent as he "never possessed illegal drugs, he never maintained a premises for the manufacturing of illegal narcotics, [and] he never possessed chemicals used in the manufacturing of illegal narcotics." (Dkt. ##1, 1-1). The Government filed a Response, asserting that Movant is not entitled to relief (Dkt. #6), and Movant filed a Reply (Dkt. #8).

## II.  STANDARD FOR FEDERAL HABEAS CORPUS PROCEEDINGS

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). In a § 2255 proceeding, a movant may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-1301 (5th Cir. 1992) (citations omitted). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). Conclusory allegations, which are unsupported and unsupportable by anything else contained in the record, do not raise a constitutional issue in a habeas proceeding. *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a [movant] who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013).

### III.  MOVANT'S GUILTY PLEA AND WAIVER

Movant pled guilty pursuant to a written plea agreement. The plea agreement contained the following waiver provision:

> Except as otherwise provided in this paragraph, the defendant waives the right to appeal the conviction, sentence, fine, order of restitution, or order of forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine, order of restitution, or order of forfeiture in any post-conviction proceeding, including, but not limited to, a proceeding under 28 U.S.C. § 2255. The defendant, however, reserves the right to appeal any punishment imposed in excess of the statutory maximum. The defendant also reserves the right to appeal or seek collateral review of a claim of ineffective assistance of counsel.

Crim. ECF (Dkt. #149, p. 5, ¶ 11).

The court first examines whether Movant knowingly and voluntarily pled guilty, as informed and voluntary waivers of post-conviction relief are upheld by the Fifth Circuit. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). To determine whether a collateral-review waiver bars an appeal, a court considers "(1) whether the waiver was knowing and voluntary and (2) whether the waiver applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Barnes*, 953 F.3d 383, 386 (5th Cir. 2020) (quoting *United States v. Kelly*, 915 F.3d 344, 348 (5th Cir. 2019)). "A waiver is knowing and voluntary if the defendant knows that he has the right to collateral review and that he is waiving it in the plea agreement." *Barnes*, 954 F.3d at 386 (citation omitted). Here, the Plea Agreement, change of plea hearing,

Factual Basis, Findings of Fact and Recommendation on Guilty Plea, and Consent to Administration of Guilty Plea and Fed. R. Crim. P. 11 Allocution by United States Magistrate Judge all show that Movant knowingly and voluntarily pled guilty and waived his rights to collateral review except in two limited circumstances. Crim. ECF (Dkt. ##148, 149, 151, 152, 216).

In his Plea Agreement, Movant waived his rights to plead not guilty, to be tried by a jury, to have his guilt proven beyond a reasonable doubt, to confront and cross-examine witnesses, to call witnesses in his defense, and to not be compelled to testify against himself. Crim. ECF (Dkt. #149, p. 1). He stated that he understood the charge and the elements of the offense, as well as the possible sentence he faced. *Id.* at pp. 1-2. Movant agreed that the Factual Basis was true. *Id.* at p. 2. Movant stipulated that his guilty plea was freely and voluntarily given, and not the result of force or threats, and that the only promises made were those contained in the Plea Agreement. *Id.* at p. 5. Movant stated:

> The defendant has thoroughly reviewed all legal and factual aspects of this case with defense counsel and is fully satisfied with defense counsel's legal representation. The defendant has received satisfactory explanations from defense counsel concerning each paragraph of this plea agreement, each of the defendant's rights affected thereby, and the alternatives to entering a guilty plea. After conferring with counsel, the defendant concedes guilt and has concluded that it is in the defendant's best interest to enter this agreement rather than proceeding to trial.

*Id.* at p. 6. Finally, Movant stated, "I have read or had read to me this plea agreement and have carefully reviewed every part of it with my attorney.  I fully understand it and voluntarily agree to it." *Id.* at p. 8. Consequently, Movant's signed Plea Agreement shows that his guilty plea and waiver were knowingly and voluntarily made.

At Movant's change of plea hearing,[2] Movant acknowledged that he understood the charge, the elements of the offense, and the rights he was waiving by pleading guilty. Crim. ECF (Dkt. #216, pp. 5-6, 9-11). He confirmed that the Second Superseding Indictment was translated into his own language and that he discussed it with counsel. *Id.* at p. 8. Movant stated that he had the opportunity to discuss with counsel all the facts, discovery, and defenses in his case. *Id.* Movant affirmed that he was fully satisfied with his counsel's legal representation and advice. *Id.* at p. 9. Movant admitted to each of the five essential elements of the offense. *Id.* at p. 11. Movant stated that he understood the range of penalties (ten years to life imprisonment) and consequences of a guilty plea. *Id.* at pp. 11-12. Movant stated that he understood that the District Judge would sentence him, that sentencing would not occur until after the presentence report ("PSR") was prepared, and that the federal sentencing Guidelines are simply discretionary. *Id.* at pp. 12-13.

Movant also confirmed that the written plea agreement and addendum were translated into his own language before he signed them. *Id.* at pp. 13-14. He also confirmed that he discussed the written plea agreement and addendum with counsel and understood everything in the plea documents before signing them. *Id.* at p. 14. The court admonished Movant as to the waiver of his appellate rights and the rights he was reserving, and Movant stated that he understood the waiver and that he voluntarily and freely gave up his appellate rights except in two limited circumstances. *Id.* at p. 18. Movant confirmed that nobody had made any promises or assurances to him to get him to enter a guilty plea other than what was contained in his plea agreement and addendum thereto. *Id.* Movant stated that he understood the plea agreement. *Id.* at p. 20. Movant confirmed that nobody forced, threatened, or coerced him to enter a guilty plea and that he was pleading guilty of his own free will because he was in fact guilty of the charge. *Id.*

---

[2] At this hearing, Movant stated that he did not understand English. A court interpreter was present at the hearing to assist Movant in understanding the proceedings. Crim. ECF (Dkt. #216, p. 2).

Additionally, Movant confirmed that the Factual Basis was translated into his own language and that he understood everything in it before he signed it. *Id.* at p. 21. After the Government read the Factual Basis into the record, Movant confirmed that everything contained in the Factual Basis was true and correct. *Id.* at pp. 21-23. Movant also confirmed that he understood that by admitting to the facts included in the Factual Basis, he was admitting to Count 1 of the Second Superseding Indictment. *Id.* at pp. 22-23. Movant confirmed that his role in the conspiracy "was to connect the suppliers with the buyers" and that he was "the middleman in ensuring that the Methamphetamine was supplied." *Id.* at p. 24. Finally, Movant's counsel confirmed that Movant understood each of the plea documents following their translation. *Id.* at p. 25. Accordingly, the plea hearing also shows that Movant's guilty plea and waiver were knowing and voluntary.

The Factual Basis stated that Movant's role was "to supply co-conspirators with kilogram quantities of methamphetamine from various sources, which was imported from Mexico, which would then be distributed to other co-conspirators and co-defendants during the term of the conspiracy in the Eastern and Northern Districts of Texas." Crim. ECF (Dkt. #151, p. 2). The Factual Basis further stated that Movant "knew that the amount involved during the term of the conspiracy involved 45 kilograms or more of a mixture or substance containing a detectable amount of methamphetamine or 4.5 kilograms or more of methamphetamine (actual)." *Id.* at p. 2. The Factual Basis also provided that "[t]his amount was involved in the conspiracy after the defendant entered the conspiracy, was reasonably foreseeable to the defendant, and was part of jointly undertaken activity." *Id.* Movant signed the Factual Basis, acknowledging that he read and discussed it with his attorney and that he fully understood its contents and "agree[d] without reservation that it accurately describe[d] the events and [his] acts." *Id.*

In the Findings of Fact, the court concluded that Movant was fully competent and capable of entering an informed plea. Crim. ECF (Dkt. #152, p. 3). The court found that that the guilty plea was supported by an independent factual basis establishing each of the essential elements of the offense. *Id.* The court further found that Movant was aware of the nature of the charges and consequences of the plea and that the guilty plea was made freely, knowingly, and voluntarily and was not the result of force, threats, or promises, other than the promises contained in the plea agreement. *Id.* In the Consent to Administration of Guilty Plea and Fed. R. Crim. 11 Allocution by United States Magistrate Judge signed by Movant, Movant again stated he understood his trial rights, the charges against him, the statutory minimum and maximum penalties, the rights he was waiving, the terms of the plea agreement, and that the factual statement he signed was true and correct. Crim. ECF (Dkt. #148). These documents also show that Movant's guilty plea and waiver were knowing and voluntary.

In cases where the record establishes that the defendant understood the nature of the charge against him and the direct consequences of his actions, the rudimentary demands of a fair proceeding and a knowing, voluntary plea are satisfied. *Wright v. United States*, 624 F.2d 557, 561 (5th Cir. 1980). Movant fails to show that he did not understand the nature of the constitutional protections that he was waiving or that he had "such an incomplete understanding of the charges against him that this plea cannot stand as an admission of guilt." *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). The Fifth Circuit has held that a defendant's testimony at the plea colloquy that no one attempted in any way to force him to plead guilty carries a strong presumption of verity. *United States v. Abreo*, 30 F.3d 29, 31 (5th Cir. 1994). If a defendant understands the nature of the charges against him and the consequences of his plea, yet voluntarily chooses to plead guilty, the plea must be upheld on federal review. *Wilkes,* 20 F.3d at 653; *Diaz v. Martin*, 718 F.2d 1372,

1376-77 (5th Cir. 1983). Formal declarations in open court carry a strong presumption of truth. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Similarly, "official documents—such as a written plea agreement—are 'entitled to a presumption of regularity and are accorded great evidentiary weight.'" *United States v. McDaniels*, 907 F.3d 366, 371 (5th Cir. 2018) (quoting *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985)). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1984).

Here, based upon the foregoing, the court finds that Movant has failed to carry his burden and concludes that Movant's guilty plea and waiver were knowing and voluntary and must be upheld on collateral review. Movant's claim—that he "was misinformed of the nature and cause of the accusation" by the court and his counsel—is conclusory and without merit. Furthermore, the record, as discussed above, refutes Movant's claim. Movant also fails to demonstrate that ineffective assistance of counsel affected the validity of the waiver or his guilty plea. Thus, any issues not reserved for review are waived by Movant's knowing and voluntary plea agreement and waiver. As such, Movant's Fourth Amendment, double jeopardy, defective indictment, material variance, sufficiency of the evidence, and actual innocence[3] claims are barred by the waiver.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Reserved for review are Movant's claims of ineffective assistance of counsel.[4] A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction

---

[3] Even if Movant's actual innocence claim were not barred by the waiver, it is well established that "actual innocence" is not a free-standing ground for habeas relief. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) ("[A]ctual-innocence is not an independently cognizable federal habeas claim."); *see also Matheson v. United States*, 440 F. App'x 420, 421 (5th Cir. 2011) (per curiam) (applying this rule in context of section 2255).

[4] Movant's ineffective assistance allegations are sprinkled throughout his memorandum (Dkt. #1-1) and are not clearly delineated. The court has endeavored to discern Movant's ineffective assistance arguments as best as the court can.

requires the defendant to show the performance was deficient and the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id*. at 700. A movant who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James*, 56 F.3d at 667. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Strickland*, 466 U.S. at 690. The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981).

A movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Movant must "affirmatively prove," not just allege, prejudice. *Id*. at 693. If he fails to prove the prejudice component, a court need not address the question of counsel's performance. *Id*. at 697. When a movant pleads guilty, as in this case, he must also show that, but for trial counsel's alleged deficient performance, he would not have pled guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 57-59 (1985).

Movant argues that his counsel was ineffective because he "impermissibly waived [his] detention hearing" and his "right to a preliminary hearing." (Dkt. #1-1, p. 5). As an initial matter, Movant, along with his counsel, signed both the Waiver of Detention Hearing and Waiver of Preliminary Examination or Hearing. Crim. ECF (Dkt. ##17, 19). Thus, any argument that the

detention hearing or preliminary hearing was waived without Movant's consent or knowledge is contradicted by the record.

Furthermore, it cannot be said that the waiver of a detention hearing actually had an adverse effect on the outcome of Movant's case. Specifically, Movant does not explain what trial counsel could have learned at the detention hearing that he could not have obtained through the discovery process. Moreover, Movant does not assert that, absent trial counsel's error in waiving the detention hearing, Movant would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 57.

Additionally, Movant was not entitled to a preliminary hearing. Under Rule 5.1(a) of the Federal Rules of Criminal Procedure, "a magistrate judge must conduct a preliminary hearing unless . . . the defendant is indicted." *See also* 18 U.S.C. § 3060(e) (preliminary examination is not required if "an indictment is returned"). Movant was indicted, and the indictment was superseded twice. Even if Movant's counsel had moved for a preliminary hearing, the subsequent return of an indictment established probable cause and rendered any preliminary hearing unnecessary. Therefore, trial counsel's waiver of the preliminary hearing was not ineffective and did not prejudice Movant. Furthermore, Movant does not assert that, absent trial counsel's error in waiving the preliminary hearing, Movant would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 57. Thus, Movant's claim does not withstand the stringent second prong of *Strickland*. *See Strickland*, 466 U.S. at 693.

Movant also argues that his counsel was ineffective for failing to move for a continuance due to Movant being "placed in jeopardy on a defective charge." (Dkt. #1-1, p. 12). Specifically, Movant alleges that because the Second Superseding Indictment charged three counts of conspiracy, it was multiplicitous and "raised double jeopardy questions." (Dkt. #1-1, p. 12). The

Double Jeopardy Clause forbids the duplicative prosecution of a defendant for the same offense. U.S. Const. amend. V; *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The Second Superseding Indictment named Movant in two counts of conspiracy: Count 1 charged Movant and six others with conspiracy to possess with the intent to manufacture and distribute methamphetamine, in violation of 21 U.S.C. § 846; and Count 2 charged Movant and five others with conspiracy to possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846. Crim. ECF (Dkt. ##102, 118). Given the different controlled substances involved in each conspiracy charge, and thus different elements to be proven in each charge, there was no double jeopardy violation. *See Blockburger*, 284 U.S. at 30; *United States v. Ramirez*, 555 F. App'x 315, 318 (5th Cir. 2014). Any challenge to the Second Superseding Indictment on multiplicitous and double jeopardy grounds would have been meritless. It is well established that counsel is not ineffective for failing to make meritless or frivolous motions or objections. *See United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

Furthermore, to the extent Movant asserts that his counsel was ineffective for failing to object to the issuance of superseding indictments based on double jeopardy grounds, his argument is without merit. The principle of double jeopardy protects against multiple prosecutions and punishments for the same offense. *See Whalen v. United States*, 445 U.S. 684, 688 (1980). The issuance of a superseding indictment, however, does not implicate double jeopardy where the defendant is not tried under the first indictment. *See Coleman v. Scott*, 37 F.3d 633 (5th Cir. 1994) (per curiam) (citing *United States v. Garcia*, 589 F.2d 249, 250-51 (5th Cir. 1979)) ("The Supreme Court has stated consistently that a prosecution does not sufficiently 'jeopardize' a defendant for purposes of a Double Jeopardy clause until the defendant is 'put to trial before the trier of facts.'") (quoting *United States v. Jorn*, 400 U.S. 470, 479 (1971)). Because Movant was not tried on the

14

original Indictment or First Superseding Indictment, jeopardy did not attach when the Second Superseding Indictment was prosecuted. "Indeed, just as an amended complaint supplants the original complaint and becomes the only live complaint in a civil case, a superseding indictment supplants the earlier indictment and becomes the only indictment in force." *United States v. Goff*, 187 F. App' x 486, 491 (6th Cir. 2006) (internal citation omitted). Accordingly, any double jeopardy challenge based on the issuance of superseding indictments would have been meritless. Counsel cannot be ineffective for failing to make meritless or frivolous motions or objections. *See Gibson*, 55 F.3d at 179.

Finally, Movant contends that his counsel was ineffective for advising him to plead guilty to the conspiracy charge because "the facts establish possession with intent to distribute . . . [w]hen he neither actually or constructively possessed methamphetamine." (Dkt. #1-1, p. 10). The court understands Movant to be arguing that his counsel was ineffective for advising him to plead guilty when the evidence was insufficient to support the conspiracy charge. As shown in detail above, Movant knowingly and voluntarily pled guilty—he understood the elements of the conspiracy charge, the maximum sentencing range, and the rights he was waiving by pleading guilty. Movant also signed a Factual Basis stipulating to the facts of the case, which aligned with the conspiracy charge in Count 1 of the Second Superseding Indictment and sufficiently established that Movant conspired to possess with the intent to manufacture and distribute methamphetamine, and Movant admitted that he was guilty as charged. Movant also admitted that he was fully satisfied with his counsel's legal representation and advice. Because the Factual Basis establishes the conspiracy offense charged in Count 1 of the Second Superseding Indictment, counsel was not deficient for advising Movant to plead guilty. Movant has failed to prove that he was given deficient or misleading advice. Nor can he show that, but for trial counsel's advice, he would have taken his

chances at trial. Movant's conclusory allegations of ineffective assistance of counsel, which are unsupported and unsupportable by anything else contained in the record, are insufficient to support the motion. *See Ross*, 694 F.2d at 1011-12. Thus, Movant fails to show that he is entitled to habeas relief based on his counsel's advice to plead guilty to Count 1 of the Second Superseding Indictment.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Movant has not yet filed a notice of appeal, the court, nonetheless, addresses whether Movant would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a [movant] relief is in the best position to determine whether the [movant] has made a substantial showing of a denial of a constitutional right on the issues before the court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected constitutional claims on the merits, the movant must demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). When a district court denies a motion on procedural grounds without reaching the underlying constitutional claim, a [certificate of appealability] should issue when the

movant shows, at least, that jurists of reason would find it debatable whether the motion states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.*

In this case, reasonable jurists could not debate the denial of Movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, Movant is not entitled to a certificate of appealability.

## VI.  CONCLUSION AND ORDER

Based on the foregoing, it is **ORDERED** that the motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED** and the case is **DISMISSED** with prejudice. A certificate of appealability is **DENIED**. It is further **ORDERED** that all motions by either party not previously ruled on are **DENIED**.

**SIGNED this the 22nd day of September, 2024.**

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE